IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LANETTE HOLMSTROM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO.: 07-CV-6044 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| METROPOLITAN LIFE INSURANCE, | ) | |
| COMPANY and EXPERIAN | ) | |
| INFORMATION SOLUTIONS, INC. | ) | |
| EMPLOYEE WELFARE BENEFIT | ) | |
| PLAN, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Lanette Holmstrom's motion for attorney's fees [99] and her bill of costs [95]. For the reasons explained below, Plaintiff's motion [99] is granted; the Court awards Plaintiff **$109,312.75** as her attorney's fees. The Court further awards Plaintiff **$1,031** in costs.

**I.    Background**

The facts of this case are detailed in this Court's prior opinion, *Holmstrom v. Metropolitan Life Ins. Co.*, 615 F. Supp. 2d 722 (N.D. Ill. 2009), and in the Seventh Circuit's opinion of the same name, reported at 615 F.3d 758 (2010). Briefly, Plaintiff stopped working in January 2000 when she developed a painful nerve condition which was eventually diagnosed as complex regional pain syndrome. Plaintiff applied to Defendant Metropolitan Life Insurance Company ("MetLife") for disability benefits, and MetLife approved her claim. However, in 2005, MetLife determined that Holmstrom was no longer disabled and terminated her benefits. After MetLife upheld its decision on administrative appeal, Plaintiff filed suit in federal court

1

under the Employee Retirement Income Security Act of 1974 ("ERISA"). See 29 U.S.C. § 1132(a)(1)(B). Plaintiff voluntarily dismissed the action when MetLife offered a second administrative appeal, which yielded the same result. Plaintiff then returned to federal court, filing the instant action to recover benefits. MetLife counterclaimed to obtain a setoff based on disability insurance benefit payments that Plaintiff received from the Social Security Administration.

On March 31, 2009, this Court granted summary judgment for Defendants on Plaintiff's claim for benefits and on MetLife's counterclaim. Plaintiff appealed and on August 4, 2010, the Seventh Circuit reversed this Court's judgment, determining that MetLife's termination of Plaintiff's benefits was arbitrary and capricious. *Holmstrom*, 615 F. 3d at 761. The Seventh Circuit retroactively reinstated Plaintiff's benefits but left the issue of Plaintiff's attorney's fees, costs, and prejudgment interest to this Court in the first instance. *Id.* at 779. The parties settled the issue of prejudgment interest [see 91], leaving the issues of attorney's fees and costs unresolved.

## II. Attorney's Fees

Section 1132(g)(1) of Title 29 provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). In *Hardt v. Reliance Standard Life Insurance Co.*, the Supreme Court recently interpreted ERISA's fee shifting provision, holding that a court may award fees to an ERISA litigant if she has achieved "some degree of success on the merits." 130 S.Ct. 2149, 2157–58 (2010). This ruling supplanted this circuit's "prevailing party" standard for awarding fees in ERISA cases. *Id.;* see also *Young v. Verizon's Bell Atlantic Cash Balance Plan*, 2010 WL 4226445 at *4 (N.D. Ill. Oct. 20, 2010); *Huss v. IBM Medical and Dental Plan*, 2011 WL 1388543, at *12 (7th Cir. April 13,

2011) (unreported) ("[T]he Supreme Court recently clarified that § 1132(g)(1) does not limit attorney's fees awards to a 'prevailing party'; rather, it affords district courts the discretion to award fees to 'either party.'").

There is no doubt that Plaintiff here achieved "some degree of success on the merits" as the Seventh Circuit reversed this Court's judgment, concluded that MetLife's benefits denial was arbitrary and capricious, and retroactively awarded Plaintiff benefits. *Hardt*, 130 S.Ct. at 2149. Once a party has achieved "some degree of success on the merits," a court must exercise its discretion to determine whether an attorney's fee should be granted. *Hardt*, 130 S.Ct. at 2158; see also *DeBartolo v. Health & Welfare Dept. of the Const. and General Laborers' Dist. Council of Chicago*, 2011 WL 1131110, at *1 (N.D. Ill. March 28, 2011); *Young*, 2010 WL 4226445, at *6.

Prior to *Hardt*, the Seventh Circuit recognized two tests to guide a court's discretion regarding whether a fee award is appropriate under 29 U.S.C. § 1132(g)(1). *Stark v. PPM America, Inc.*, 354 F.3d 666, 673 (7th Cir. 2004) (citing *Quinn v. Blue Cross & Blue Shield Ass'n*, 161 F.3d 472, 478 (7th Cir. 1998)). Both tests essentially ask the same question, "was the losing party's position substantially justified and taken in good faith, or was the party simply out to harass the opponent?" *Stark*, 354 F.3d at 673 (quoting *Bowerman v. Mal–Mart Stores, Inc.*, 226 F.3d 574, 593 (7th Cir. 2000)).

Under the first test "an award of fees to a successful defendant may be denied if the losing party's position was both 'substantially justified'-meaning something more than non-frivolous, but something less than meritorious-and taken in good faith, or if special circumstances make an award unjust." *Herman v. Central States, S.E. and S. W. Areas Pension Fund*, 423 F.3d 684, 696 (7th Cir. 2005); see also *Stark v. PPM America, Inc.*, 354 F.3d 666, 673

(7th Cir. 2004). A position is not substantially justified if it is without a "solid basis." *Prod. & Maint. Employees' Local 504 v. Roadmaster Corp.*, 954 F.2d 1397, 1405 (7th Cir. 1992).

Under the second test, the Court looks to the following five factors to determine whether a fee award is appropriate: 1) the degree of the offending parties' culpability or bad faith; 2) the degree of the ability of the offending parties to satisfy personally an award of attorney's fees; 3) whether or not an award of attorney's fees against the offending parties would deter other persons acting under similar circumstances; 4) the amount of benefit conferred on members of the pension plan as a whole; and 5) the relative merits of the parties' positions. *Quinn*, 161 F.3d at 478. When employing the five-factor test, not all factors need be present to conclude that an award of fees is appropriate; rather, "the five factor test involves a weighing of the relevant factors as they apply to the facts of a particular case." *Lockrey v. Leavitt Tube Employees' Profit Sharing Plan*, 1991 WL 255466, at *2 (N.D. Ill. Nov. 22, 1991). The five-factor test is used to "structure or implement, rather than to contradict" the substantially justified test. *Lowe v. McGraw–Hill Cos.*, 361 F.3d 335, 339 (7th Cir. 2004).

Both the Seventh Circuit and the Supreme Court have questioned the five-factor test's continued vitality. See *Sullivan v. William A. Randolph, Inc.*, 504 F.3d 665, 672 (7th Cir. 2007) (noting that the five-factor test "adds little * * * to the simpler test, and perhaps has outlived its usefulness"); *Hardt*, 130 S.Ct. at 2158 (observing that because the five-factor tests used by a number of circuits "bear no obvious relation to § 1132(g)(1)'s text or to our feeshifting jurisprudence, they are not required for channeling a court's discretion when awarding fees under this section"). And following *Hardt*, courts in this district have questioned the ongoing utility of either test.[1]

---

[1] In *Raybourne v. Life Insurance Company of New York*, Judge Gettlemen remarked that "[i]t is difficult to image the continued futility [sic] of the substantial justification test in light of *Hardt'* s adoption of the

Most recently, in *Huss v. IBM Medical and Dental Plan*, 2011 WL 1388543, at *12 (7th Cir. April 13, 2011), a recent unreported case, the Seventh Circuit opined that "[e]ven after an eligibility determination under *Hardt*, [courts] still must consider whether an award of attorney's fees is appropriate." The Seventh Circuit concluded that even after *Hardt*, application of its "traditional" twin tests was still relevant to "inform the court's analysis" regarding whether an award of fees is appropriate. *Id.* And, although the district courts discussed in footnote one acknowledged that the continued application of the twin tests is an open question, those courts applied the tests anyway. See *Raybourne*, 2011 WL 528864, at *2; *Young*, 2010 WL 4226445, at *9; *DeBartolo*, 2011 WL 1131110, at *2. This Court will do the same.

Here, it is without question that Plaintiff is entitled to her attorney's fees regardless of which tests are applied. The first factor, the degree of culpability or bad faith of the offending party bears little on the issue, although the Seventh Circuit did find that MetLife was acting under a conflict of interest that affected its decision. *Holmstrom*, 615 F.3d at 777-78. The second factor, the ability to pay, weighs in favor of an award. Defendants obviously have the ability to satisfy any award ordered. The third factor, whether an award might deter others acting under similar circumstances also favors Plaintiff. For instance, other plan administrators are

---

'some degree of success' standard." 2011 WL 528864, at *2, (N.D. Ill. Feb.8, 2011). Judge Gettlemen refers to Magistrate Judge Denlow's analysis in *Young v. Verizon's Bell Atlantic Cash Balance Plan:*

> Because "some success' represents the new threshold to an ERISA fee award, the substantial justification test makes little sense. If one party has experienced only some success, then the opposing party, almost by definition, has also achieved some success. If so, the opposing party's position will often be non-frivolous that is, substantially justified. Applying a substantial justification test where the threshold for fee eligibility is only some success therefore undermines the broader eligibility for fees that should exist when the fee provision lacks a "prevailing party" requirement.

*Id.* (quoting *Young*, 2010 WL 4226445 at *10). Both Judge Denlow and Judge Gettlemen question the continued utility of the five-factor test, particularly in light of the view that the five-factors are "simply an elaboration of the substantial justification test." *Young*, 2010 WL 4226445 at *11 (citing *Sullivan*, 504 F.3d at 672); see also *Raybourne*, 2011 WL 528864, at *2.

more likely to be conscious of structural conflicts if they face fee awards in addition to being required to pay benefits. The fourth factor, benefit to other members of the pension plan, is largely irrelevant in an individual dispute such as the instant case, although MetLife may be more likely to take into account the Social Security Administration's decisions to award benefits after the instant case. Finally, the fifth factor (relative merit) is, as *Sullivan* noted, 504 F.3d at 672, "an oblique way of asking whether the losing party was substantially justified in contesting his opponent's claim or defense." To this point, the Seventh Circuit specifically concluded that MetLife's actions were arbitrary and capricious. Consequently, whether or not the substantial justification or five-factor test remain viable, Plaintiff is entitled to fees. (In fact, MetLife concedes as much (Def. Mem. [130] at 2) and the crux of the parties' dispute is not over whether fees are appropriate at all, but how much should be awarded.)

As the Seventh Circuit recently reiterated, "[a]lthough there is no precise formula for determining a reasonable fee, the district court generally begins by calculating the lodestar—the attorney's reasonable hourly rate multiplied by the number of hours reasonably expended." *Schlacher v. Law Offices of Rotche & Associates, P.C.,* 574 F.3d 852, 856 (7th Cir. 2009) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433-37 (1983)). The district court may then adjust that figure to reflect various factors including the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation. *Id*. at 856-57. Plaintiff requests attorney's fees of $104,842.75. (See [103] at 2). This amount represents 97.8 hours of attorney Mark DeBofsky's time (at $500 per hour), 99.25 hours of associate Violet Borowski's time (at $375 per hour), and 187.24 hours of "law clerk" time (at $100 per hour). In support of her motion, Plaintiff attaches an itemization of all fees incurred by her attorneys, a declaration of attorney DeBofsky in support of the hourly fees claimed and the reasonableness of both the

6

hourly rate and the time expended, and three declarations from attorneys in support of the reasonableness of the hourly fees claimed. Plaintiff also requests $6,070 in fees incurred since the drafting and filing of her motion for attorney's fees.

Defendants raise three arguments against the fee request, and the Court will address each in turn. First, Defendants argue that fees should not be awarded for work performed in Plaintiff's first lawsuit (06-cv-1149, before Judge Lefkow), which Plaintiff voluntarily dismissed when MetLife agreed to a second administrative appeal. Defendants also argue that fees incurred during the subsequent administrative appeal are not recoverable. Plaintiff's attorneys seek $14,935 in fees for work performed during the first lawsuit and subsequent administrative appeal.

The court concludes that fees for work performed during the initial case before Judge Lefkow are recoverable. In order to obtain fees under 29 U.S.C. § 1132(g), a party need only show "some degree of success on the merits." *Hardt*, 130 S.Ct. at 2152. Plaintiff's initial complaint and the work performed between the dates of 3/2/2006 and 10/5/2006 (which included drafting of a motion to compel) undoubtedly caused Defendants to agree to a second administrative appeal—in essence a "voluntary remand." This result certainly qualifies as "some degree of success on the merits" under *Hardt*. See, *e.g. Hewel v. Long Term Disability Income Plan for Choices Eligible Employees of Johnson & Johnson*, 2010 WL 2710582, at *1-*2 (D. N.J. July 7, 2010) (awarding fees under *Hardt* for work in prosecuting lawsuit even though insurer voluntarily remanded and approved claim).[2] Furthermore, the work that Plaintiff's

---

[2] Furthermore, in *Hardt*, the Supreme Court concluded that the district court was within its discretion to award fees where the court held that the administrator failed to comply with ERISA and ordered an administrative remand. 130 S.Ct. at 2154. Here, Plaintiff's attorneys essentially obtained the same relief that was deemed compensable in *Hardt*—a second administrative review—without a need for a court order.

7

attorneys performed on the first lawsuit undoubtedly was useful to them in litigating the second, as the first lawsuit involved the same long term disability benefits claim and period of disability as in the instant case.[3] While the previous suit before Judge Lefkow and the instant suit bear different case numbers, they are essentially two parts of the same case.[4]

However, the fees claimed for work performed during the second administrative appeal that occurred as a result of the parties "voluntary remand" are not recoverable. This amounts to $1,600 in fees incurred between 10/05/2006 (the date that the parties voluntarily dismissed 06-cv-1149) and 10/24/2007 (the date Plaintiff's attorneys began work on the complaint in the instant lawsuit). As Plaintiff recognizes, "attorney's fees are ordinarily not recoverable for pre-suit administrative appeals." (Pl. Reply [131] at 3); see also *Peterson v. Continental Cas. Co.*, 282 F.3d 112, 120 (2d Cir. 2002) (pre-litigation fees and costs, including those incurred in administrative proceedings prior to a suit being filed, are not authorized by ERISA); *Huss v. IBM Medical & Dental Plan*, 2010 WL 2836743, at *5 (N.D. Ill. July 15, 2010), rev'd on other grounds by *Huss*, 2011 WL 1388543. However, a number of courts, including the Second Circuit in *Peterson*, have held that "a party may * * * recover costs incurred during an administrative remand ordered by a court." *Id*. at 122.[5] As Plaintiff recognizes, the rationale for these cases is that "[w]here the administrative proceedings are ordered by the district court and where that court retains jurisdiction over the action during the pendency of the administrative proceedings, [* * * then] ERISA authorizes the award of associated costs." *Id.*

Plaintiff attempts to equate her voluntary dismissal of the 06-cv-1149 matter with a court-

---

[3] By way of example, Plaintiff billed 7.6 hours in the drafting of the complaint in the first case, and only billed approximately 4 hours for preparing the complaint in the instant matter.

[4] Defendants argue that attorney DeBofsky "waived any right to seek fees in the first suit." (Def. Mem. at 3). Defendants cite no authority in support of this argument.

[5] The Seventh Circuit does not appear to have considered this issue.

ordered remand, but the Court finds this argument unpersuasive. The crucial difference between the *Petersen* line of cases and the instant case is that in the instant case, Judge Lefkow had no jurisdiction over the parties' dispute following the voluntary dismissal. See, *e.g. McCall-Bey v. Franzen*, 777 F.2d 1178, 1190 (7th Cir. 1985) ("There must be a deliberate retention of jurisdiction, as by issuing an injunction or stating that jurisdiction is retained for a particular purpose. An unconditional dismissal terminates federal jurisdiction except for the limited purpose of reopening and setting aside the judgment of dismissal within the scope allowed by Rule 60(b)."). Accordingly, fees incurred during the administrative appeal that followed the voluntary dismissal are not compensable. *Peterson*, 282 F.3d at 120.

Second, Defendants argue that Plaintiff is "not entitled to fees for claims in which MetLife and the Plan prevailed." (Def. Mem. at 4). Specifically, Defendants argue that MetLife asserted a counterclaim against Holmstrom and ultimately prevailed on that counterclaim—obtaining a judgment for overpaid benefits in the amount of $70,107.73. Defendants also argue that certain of Holmstrom's arguments and motions failed. Namely, Holmstrom argued that the standard of judicial review of the benefits denial should be *de novo* and not arbitrary and capricious, and that Holmstrom pursued a motion for preliminary injunction that the Court denied.

The Court concludes that Plaintiff's attorney's fee award should not be reduced to reflect her "unsuccessful" arguments. A fee award "should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley v. Eckerhart,* 461 U.S. 424, 435 (1983) (" Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee."). It is appropriate to consider the litigation as a whole, rather than viewing the

specific claims atomistically, if "the plaintiff's claims of relief * * * involve a common core of facts or [are] based on related legal theories," such that "much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Ustrak v. Fairman,* 851 F.2d 983, 988 (7th Cir. 1988); see also *Dunning v. Simmons Airlines, Inc.,* 62 F.3d 863, 873 (7th Cir. 1995).

In *Kitchen v. TTX Co.*, 2001 WL 40803, at *3 (N.D. Ill. Jan. 17, 2001), Judge Andersen considered a near-identical argument to the one that Defendants here make. The losing party there argued that "the time spent preparing the motion and hearing for the [failed] preliminary injunction and the unsuccessful discovery disputes should be excluded." *Id.* Citing *Hensley* and *Kurowski v. Krajewski,* 848 F.2d 767, 776 (7th Cir. 1988), Judge Andersen reasoned as follows:

> The contested motions informed the Court, and were reasonable both in terms of content and time spent. Because the plaintiffs prevailed in the overall lawsuit and the motions were reasonable, we will not deduct the time spent on plaintiffs' unsuccessful legal efforts.

The Court finds Judge Andersen's reasoning to be persuasive and adopts it.[6] The issues on which Plaintiff failed were part of and related to the claim on which they succeeded—in that they involved "a common core of facts" and were "based on related legal theories." *Hensley*, 461 U.S. at 435. Accordingly, work performed on these issues is compensable. Additionally, the Court notes that in Plaintiff's reply brief, her attorneys explain that they spent little time (a little more than three hours) litigating Defendant's counterclaim.

Finally, while Defendants take no issue with the number of hours that Plaintiff's attorneys billed on this matter, Defendants do argue that the attorneys in Mr. DeBofsky's firm

---

[6] See also *Ragsdale v. Turnock*, 1995 WL 115527, at *3 (N.D. Ill. March 14, 1995) ("The claims upon which Plaintiff did not prevail-primarily Plaintiffs' attempt to obtain declaratory relief and an injunction [* * *] are closely related to the claims upon which plaintiff obtained substantially the result they sought in their complaint. Accordingly, the work expended by Plaintiffs on the "unsuccessful" claim is related to the work expended on the "successful" claims. [* * *] Therefore, no reduction of the hours worked by Plaintiffs' attorneys due to Plaintiffs' "partial success" is appropriate.").

have inflated their billing rates. (Def. Mem. at 6). While attorney DeBofsky billed out all of his time in this case at $500 per hour, Defendants note that in another case (*Pasternak v. Radek*, 2008 WL 2788551 (N.D. Ill. April 3, 2008)), Mr. DeBofsky submitted an affidavit that stated that in late 2007 he charged $425 per hour but anticipated increasing the rate to $500 in early 2008. Defendants also argue that Mr. DeBofsky's decision to raise his rate from $425 to $500 per hour in 2008 "fails to reflect the reality of the market," in which many law firms maintained or cut their rates in the face of the economic downturn. (Def. Mem. at 7). Defendants also argue that the hourly rate billed for Attorney Borowski (a 2004 graduate of Chicago-Kent Law School) was excessive. Ms. Borowski's time was billed at $375 per hour.

To determine an attorney's reasonable hourly rate, courts look to the "market rate" for the work performed, meaning "the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Spegon v. Catholic Bishop of Chicago,* 175 F.3d 544, 554-55 (7th Cir. 1999). The burden of proving the market rate is on the party seeking attorneys' fees. *Id.* at 554. "[O]nce the attorney provides evidence establishing his market rate, the burden shifts to the [opposing party] to demonstrate why a lower rate should be awarded." *Id.* at 554-55. Because "[t]he best evidence of the value of the lawyer's services is what the client agreed to pay him," an attorney's actual billing rate is "presumptively appropriate" for use as the market rate. *Mostly Memories, Inc. v. For Your Ease Only, Inc.,* 594 F. Supp. 2d 931, 934 (N.D. Ill. 2009) (citations omitted).

Attorney DeBofsky spends many pages of his reply brief defending his firm's rates, and the Court need not address each of the points made in detail. In addition to his own declaration, Mr. DeBofsky attaches to his motion for fees three declarations by attorneys who practice in the ERISA field, which all support the reasonableness of the firm's billing rates. (One of the

11

attorneys is based in Chicago, the other two are based in California and Washington D.C., respectively). The Court sees nothing unreasonable about the rate of $500 per hour that Mr. DeBofsky charged in this matter. Mr. DeBofsky is one of the leading attorneys in this city among those who practice in the ERISA field. Other courts have recognized Mr. DeBofsky's "highly specialized knowledge of ERISA law." *Torgeson v. Unum Life Ins. Co. of Am.*, 2007 U.S. Dist. LEXIS 9332, at *20-21 (N.D. Iowa Feb. 5, 2007); see also *Dobson v. Hartford Fin. Servs. Group, Inc.*, 2002 U.S. Dist. LEXIS 17682, at *9 (D. Conn. Aug. 2, 2002). Further, this case was not a simple matter; rather it involved a complicated record and a number of relatively novel legal issues.[7] Defendants present no evidence that attorney Borowski's rates are out of line for a lawyer of her skills and experience. In fact, Plaintiff reports that Ms. Borowski has since left DeBofsky's firm and now works at the law firm of Seyfarth Shaw, where she continues to charge $375 per hour. The Court concludes that Plaintiff has met her burden of proving that a rate of $500 per hour for Mr. DeBofsky and $375 per hour for Ms. Borowski are reasonable market rates, *Spegon,* 175 F.3d at 554-55, and Defendants offer no evidence sufficient to refute this conclusion.[8]

Lastly, Plaintiff's fee petition includes $18,724 for work that 10 different non-attorney law clerks performed at $100 per hour. Defendants argue that this number should be reduced by

---

[7] Regarding Mr. DeBofsky's decision to raise his rates in 2008, DeBofsky explains that the economic downturn actually increased demand for his work, and consequentially supported a rate increase. See Pl. Reply at 9 (citing *Langston v. N. Am. Asset Dev. Corp. Group Disability Plan*, 2010 U.S. Dist. LEXIS 35594, at *2-*3 (N.D. Cal. April 12, 2010) (attorney explained that "the economic downturn has actually resulted in a greater number of denials of ERISA participants' claims for disability benefits, increasing ERISA attorneys' caseloads and consequentially their rates.").

[8] Further, the Court concludes that it was appropriate for Mr. DeBofsky to charge $500 per hour for work that he performed in 2006 and 2007—a time period in which he was charging $425 per hour for his services. When an attorney must wait until the end of a drawn-out case to obtain his attorney's fees, "[c]ompensation for this delay is generally made 'either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value.'" *Perdue v. Kenny A. ex rel. Winn*, 130 S.Ct. 1662, 1675 (2010) (quoting *Missouri v. Jenkins,* 491 U.S. 274, 282 (1989)).

50% to reflect the "sheer number of law clerks used" which "resulted in repetitive work as each law clerk needed to become familiar with the case." Def. Mem. at 7 (citing *Hensley*, 461 U.S. at 434 ("Cases may be overstaffed * * * Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary.")). To this point, courts in this district have recognized that "the use of law clerks in lieu of another attorney is actually a more economical choice" and "to the extent there was some duplication of effort it was offset by the lower rate charged by the law clerks." *Dupuy v. McEwen*, 648 F. Supp. 2d 1007, 1024 (N.D. Ill. 2009) (citing *Nickola v. Barnhart*, 2004 WL 2713075, at *1 (W.D. Wis. Nov. 24, 2004)). Furthermore, the Court notes that the total number of hours spent on this matter by Daley, DeBofsky, & Bryant was far from excessive. See Pl. Reply at 10-12 (reporting fee awards that list total hours worked in ERISA matters similar to the instant case). This objection is overruled.

Finally, there is the matter of Plaintiff's request for the $6,070 in fees incurred by her attorneys in negotiating and litigating the instant fee petition. The Seventh Circuit teaches that attorney's fees incurred in litigating and establishing an attorney's entitlement to fees are generally compensable. *Bond v. Stanton*, 630 F.2d 1231, 1235 (7th Cir. 1980); see also *K.L. v. Edgar*, 2001 WL 184974, at *1 (N.D. Ill. Feb. 21, 2001) ("A reasonable attorney's fee, our court of appeals has held, includes fees plaintiffs expend "litigating their claim to fees."). Defendants did not seek to file a sur-reply challenging any of the particulars of the amount of "fees on fees" sought.

Accordingly, the Court awards attorney's fees as follows:

| Initial fee request | $104,842.75 |
|---|---|

| | |
|---|---|
| Reduction for 2nd Admin. Appeal | ($1,600) |
| Time litigating fee petition | $6,070 |
| **Total** | **$109,312.75** |

## III. Costs

Rule 54(d)(1) provides that "costs – other than attorney's fees – should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). The rule "provides a presumption that the losing party will pay costs but grants the court discretion to direct otherwise." *Rivera v. City of Chicago*, 469 F.3d 631, 634 (7th Cir. 2006). However, the Seventh Circuit recognizes "only two situations in which the denial of costs might be warranted: the first involves misconduct of the party seeking costs, and the second involves a pragmatic exercise of discretion to deny or reduce a costs order if the losing party is indigent." *Mother & Father v. Cassidy*, 338 F.3d 704, 708 (7th Cir. 2003); see also *Rivera*, 469 F.3d at 634-35. Taxing costs against the non-prevailing party requires two inquiries: (1) whether the cost is recoverable; and (2) whether the amount assessed is reasonable. See *Majeske v. City of Chicago*, 218 F.3d 816, 824 (7th Cir. 2000). The list of recoverable costs pursuant to 28 U.S.C. § 1920 includes (1) fees of the clerk and marshal, (2) fees for transcripts, (3) witness fees and expenses, (4) fees for copies of papers necessarily obtained for use in the case, (5) docket fees, and (6) compensation for court-appointed experts and interpreters. See *Republic Tobacco Co. v. N. Atl. Trading Co., Inc.*, 481 F.3d 442, 447 (7th Cir. 2007).

In her bill of costs, Plaintiff seeks a total of $1,031 ($600 in fees of the clerk, $40 for service of summons and subpoena, and $391.40 in printing costs). There is no question that Plaintiff is the "prevailing party" in this action. Defendants do not object to any of the amounts

sought, and the amounts sought appear reasonable to the Court. Accordingly, the Court awards Plaintiff $1,031 in costs.

**IV.     Conclusion**

For the foregoing reasons, Plaintiff's motion [99] is granted; the Court awards Plaintiff **$109,312.75** as her attorney's fees. The Court further awards Plaintiff **$1,031** in costs.

Dated: May 31, 2011    _____
                                            Robert M. Dow, Jr.
                                            United States District Judge